**[J-24-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 15 WAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered June 30, |
| | : | 2023, at No. 1256 WDA 2021, |
| v. | : | affirming the Judgment of Sentence |
| | : | of Allegheny County Court of |
| | : | Common Pleas entered June 30, |
| VINCENT SMITH, | : | 2021, at No. CP-02-CR-0008964- |
| | : | 2018. |
| Appellant | : | |
| | : | ARGUED: April 9, 2025 |

**OPINION**

**CHIEF JUSTICE TODD**                    **DECIDED: NOVEMBER 19, 2025**

In this discretionary appeal, we must determine whether the unit of prosecution[1] for the offense of Arson Endangering Persons ("AEP")[2] is each act of arson, or each endangered person. For the reasons that follow, we hold that the unit of prosecution for AEP is each act of arson, and, accordingly, we reverse the decision of the Superior Court and remand the matter for resentencing consistent with this opinion.

**I. Factual and Procedural History**

---

[1] A unit of prosecution is the *actus reus*, or conduct, that the General Assembly intends to punish. *Commonwealth v. Satterfield*, 255 A.3d 438, 445 (Pa. 2021). In other words, "the unit of prosecution is the minimum conduct that must be proven to obtain a conviction for the statute in question." *Id.* at 445-46. Critically, "[o]nly a single conviction and resulting punishment may be imposed for a single unit of prosecution." *Id.* at 446.

[2] 18 Pa.C.S. § 3301(a)(1)(i).

In February 2018, four police officers arrived at a rowhouse in Pittsburgh in an effort to locate a missing person, John Van Dyke. The officers forcibly entered the home and repeatedly announced their presence. Once inside, the officers heard Appellant, Vincent Smith, who was on the second floor of the residence, declare "Steve's not here." *Commonwealth v. Smith*, 298 A.3d 1140, 1141 (Pa. Super. 2023). After re-announcing their presence and stating their purpose, the officers observed Appellant striking matches and throwing them on the floor, instantly setting a fire that traveled down the stairs toward the officers. The officers immediately exited the residence, and Appellant was rescued by firemen and treated for smoke inhalation.

Subsequently, the bodies of Van Dyke and another man, Steven Pariser, were recovered from the residence. Both men had trauma to the back of their heads, and it was determined that Appellant had killed the men approximately five days earlier; thus, their deaths were ruled as homicides. Appellant told detectives that the two victims had attacked him, and he fought back by throwing them down a flight of stairs, after which he covered them with blankets and bags. Appellant also stated that he wanted to kill himself, and that he had attempted to do so by taking some pills and spreading lighter fluid around the residence.

Appellant was charged with two counts of homicide, multiple counts of arson, and related offenses. On April 5, 2021, Appellant entered open guilty pleas to two counts of voluntary manslaughter[3] for the deaths of Van Dyke and Pariser, and four counts of AEP, one for each police officer present in the residence when he started the fire. Subsequently, the trial court sentenced Appellant to 5 to 10 years imprisonment for each voluntary manslaughter offense, and 4 to 8 years imprisonment for each AEP offense,

---

[3] *Id.* § 2503.

with all sentences to run consecutively, for an aggregate sentence of 26 to 52 years imprisonment.

Thereafter, in a post-sentence motion, Appellant challenged the voluntariness of his plea, as well as the discretionary aspects of his sentence, and the trial court conducted a hearing on August 23, 2021. During the hearing, the question arose as to whether an individual may be sentenced on multiple counts of AEP under Section 3301 of the Crimes Code based on a single arson that endangered more than one individual. The trial court deferred ruling on Appellant's post-sentence motion, and directed the parties to file supplemental briefs addressing that issue. Pertinently, the AEP statute at issue provides, in relevant part:

**(a) Arson endangering persons.--**

(1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; or

18 Pa.C.S. § 3301(a)(1)(i).

On September 20, 2021, after the parties filed their supplemental briefs, the trial court conducted a second hearing, at which Appellant argued that, because he only committed one arson, he could be sentenced on only one count of AEP. In support of his position, Appellant relied on this Court's decision in *Satterfield, supra.* In *Satterfield*, the defendant was driving a tractor trailer on the interstate when he approached multiple vehicles that were stopped at a construction zone. Without reducing his speed, he crashed into several of the vehicles, resulting in the death of two people in one car, a third in another car, and injuries to numerous others. Following the accident, Satterfield fled

the scene. Subsequently, he pled guilty to, *inter alia*, three counts of hit and run in violation of 75 Pa.C.S. § 3742.[4] Over his objection, the court sentenced him to three consecutive terms of three to six years imprisonment. On appeal, Satterfield argued that he should have been sentenced on a single count of violating Section 3742 because there was a single accident after which he left the scene and, thus, he violated the statute only once. The Superior Court rejected his argument, and affirmed his judgment of sentence. On appeal, this Court determined that the unit of prosecution under Section 3742 is the act of leaving the scene of an accident without first rendering aid and providing the information required by 75 Pa.C.S. § 3744, regardless of the number of victims or the severity of their injuries. Accordingly, we held that Satterfield violated Section 3742(a) only once, and we vacated two of his three judgments of sentence.

Conversely, the Commonwealth, in the instant case, argued that the imposition of separate sentences for each of the officers endangered by Appellant's act of arson was proper under this Court's decision in *Commonwealth v. Frisbie*, 485 A.2d 1098 (Pa. 1984). In *Frisbie*, the defendant was fleeing from police when he drove his car through a crowded intersection, injuring nine pedestrians. Frisbie was convicted of one count of leaving the

---

[4] At the time of the offense in *Satterfield*, Section 3742, titled "Hit and run," provided, in relevant part:

> **General rule.**-- The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3742(a). Effective July 3, 2023, Section 3742 was amended to add subsection (a.1), which pertains to "Highly automated vehicles." Act of Nov. 3, 2022, P.L. 1946, No. 130, § 4.

scene, and nine counts of recklessly endangering another person ("REAP") under 18 Pa.C.S. § 2705. That section provides, in relevant part, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." *Id.* Frisbie was sentenced to 10 one-year terms of probation, one for leaving the scene, and one for each of the nine REAP offenses. On appeal, the Superior Court reversed Frisbie's judgment of sentence, holding that his single act of propelling his vehicle into a crowd supported only one sentence. Upon further review, this Court reversed the Superior Court's decision. We held that the language of the statute – specifically, that a person commits a second-degree misdemeanor "if he recklessly engages in conduct which places or may place *another person* in danger of death or serious bodily injury" – suggested that the legislature intended to allow separate punishments for each victim. *Frisbie*, 485 A.2d at 1100 (emphasis original). We further noted that the general purpose of the Crimes Code, which includes imposing punishment that is proportionate to criminal liability and differentiating among offenders based on the seriousness of the offenses, supported the imposition of a separate sentence for each endangered individual.

In the case *sub judice*, the trial court ultimately found *Frisbie* controlling, and concluded that, because the offense of AEP "requires proof of both an arson and that an enumerated person be placed in danger of death or bodily injury from the arson," the unit of prosecution is each endangered person. Trial Court Opinion, 4/6/22, at 7 (emphasis omitted). Accordingly, the trial court held that Appellant's four separate sentences for AEP were proper.

Appellant appealed his judgment of sentence to the Superior Court, claiming that the trial court's imposition of four separate sentences for separate AEP offenses constituted an illegal sentence because Section 3301(a)(1)(i) provides for only a single

sentence, regardless of the number of victims endangered by the commission of a single arson.[5] Appellant argued, *inter alia*, that Section 3301(a)(1)(i) is ambiguous because there are two possible interpretations of the statute. Specifically, Appellant asserted that Section 3301(a)(1)(i) may be read as prosecuting each arson, or, alternatively, as prosecuting "arsons as ersatz crimes against persons," *Smith*, 398 A.3d at 1144. In support of his claim that the intended unit of prosecution is each arson, rather than each individual endangered by the commission of the arson, Appellant offered: (1) when there are two reasonable interpretations of a statute's unit of prosecution, a court should adopt the more lenient one; (2) the titles of Section 3301 ("Arson and related offenses") and subsection 3301(a) ("Arson endangering persons") suggest that the primary focus of the offense is arson, not endangerment; and (3) although the AEP statute contains an element of endangerment to another person in the singular, Section 1902 of the Statutory Construction Act ("SCA") provides that the "singular shall include the plural, and the plural, the singular." 1 Pa.C.S. § 1902.

Initially, a three-judge panel of the Superior Court reversed three of Appellant's four AEP convictions, vacated the corresponding judgments of sentence, and remanded the case for resentencing. However, following reargument, an *en banc* panel of the Superior Court, in an 8-1 decision, affirmed Appellant's original convictions and judgments of sentence.

In an opinion authored by then-Judge, now-Justice McCaffery, the court found the language of Section 3301(a)(1)(i) to be unambiguous, and held that the intended unit of

---

[5] When a defendant pleads guilty, he waives the right to challenge all but the legality of his sentence and the validity of his plea. *Commonwealth v. Montgomery*, 401 A.2d 318, 319 (Pa. 1979). Thus, although Appellant pled guilty to four separate AEP offenses, his challenge to the legality of the sentences imposed for those offenses is non-waivable. Accordingly, his claims before us address his sentences for AEP, not the underlying convictions.

prosecution is the commission of an arson "coupled with" the reckless placement of another person in danger of death or bodily injury. *Smith*, 298 A.3d at 1143 (emphasis omitted). The court reasoned that the plain meaning of the word "and" at the end of Section 3301(a)(1) "requires the Commonwealth to prove not only that a defendant 'intentionally start[ed] a fire,' but **also** that they 'recklessly place[d] another person in danger of death or bodily injury[.]'" *Id.* at 1147 (emphasis original).

Further, in considering whether Section 3301(a)(1)(i) "contemplates placing a single person in danger, or more than one person," the court found this Court's decision in *Frisbie* "instructive," observing:

> The REAP statute at issue in [*Frisbie*] and the pertinent [AEP] subsection bear similarities. A person commits REAP when they "recklessly engage[ ] in conduct which places or may place **another person** in danger of death or serious bodily injury." 18 Pa.C.S. § 2705 (emphasis added). The *Frisbie* Court emphasized the phrase, "another person" and . . . construed this language to mean "that § 2705 was written with regard to **an individual person** being placed in danger of death of serious bodily injury, and that a separate offense is committed for [each] individual person placed in such danger." *Frisbie*, 485 A.2d at 1100. Similarly, the definition of [AEP] is the intentional starting of a fire "and" the "recklessly plac[ing] **another person** in danger of death or bodily injury[.]" *See* 18 Pa.C.S. § 3301(a)(1)(i) (emphasis added). Applying the rationale of *Frisbie*, we conclude the phrase, "another person," "was written with regard to **an individual person** being placed in danger of death of serious bodily injury," and thus separate offenses are committed for each person placed in such danger. Thus, separate sentences may be imposed.

*Id.* (emphasis original).

The court noted that Appellant neglected to address this Court's holding in *Frisbie* that, "[w]here the legislature has intended to preclude multiple punishments for multiple injuries resulting from a single act, it has expressly done so." *Frisbie*, 485 A.2d at 1100 (citing 18 Pa.C.S. § 2707 (it is a crime to throw a rock or any deadly or dangerous missile

into a vehicle "that is occupied by one or more persons"); 18 Pa.C.S. § 2710 (a person commits ethnic intimidation if they commit an offense "with malicious intention toward the race, color, religion or national origin of another individual or group of individuals")) (emphasis omitted).

Thus, the Superior Court held that, under the plain language of Section 3301(a)(1)(i), the unit of prosecution for AEP is "the intentional starting of a fire which recklessly places another person in danger of death or bodily injury," and, therefore, that "a defendant may be convicted of and sentenced separately on multiple counts if one act of arson causes more than one person to be in danger of death or bodily injury." *Smith*, 298 A.3d at 1148.

Judge Lazarus authored a dissenting opinion, in which she suggested that, although the reckless endangerment of another individual is an element of AEP for purposes of conviction, the inclusion of an "intentional" *mens rea* requirement for starting a fire under Section 3301(a)(1), and the absence of any *mens rea* requirement for reckless endangerment in subsection (i), demonstrates that the *actus reus* for AEP is the setting of a fire, not the resulting endangerment. *Id.* at 1150 (Lazarus, J., dissenting). Judge Lazarus further opined that the placement of the headings in Chapter 33 of the Crimes Code supported Appellant's construction of the statute, and she expressed her disagreement with the majority's conclusion that *Frisbie* is controlling, noting that the REAP offense at issue in *Frisbie* criminalized unspecified conduct, whereas the AEP statute "specifically applies to an actor who 'intentionally starts a fire.'" *Id.* at 1152 (emphasis omitted). Concluding that the language of Section 3301(a)(1)(i) is ambiguous because the unit of prosecution may reasonably be interpreted as either "the intentional starting of a fire, or put another way, an arson," *id.* at 1149, or the endangerment of another person, Judge Lazarus indicated that she would apply the rule of lenity to strictly

construe the statute in favor of Appellant, and, as a result, vacate the judgments of sentence on three of Appellant's four convictions for AEP.

We granted Appellant's petition for allowance of appeal to determine whether the Superior Court erred in determining that the unit of prosecution for the offense of AEP is each endangered person, as opposed to each arson. *See Commonwealth v. Smith,* 320 A.3d 82 (Pa. filed June 4, 2024) (order).

## II. Arguments

Before this Court, Appellant initially contends that the text of Section 3301(a)(1)(i) "plainly provides for a unit of prosecution of each arson, not each endangerment." Appellant's Brief at 19 (emphasis omitted).[6]  In support of his position, Appellant offers the following interpretation of the statute:

> A person commits [AEP] if he intentionally (the *mens rea*); starts a fire or causes an explosion, or . . . aids, counsels, pays or agrees to pay another to cause a fire or an explosion (the *actus reus*); and thereby recklessly places another person in danger of death or serious bodily injury (the result). Indeed, the language describes the conduct at issue as arson and then, using "thereby," an adverb of causation, describes reckless placement of others in danger as the conduct's result.

*Id.* at 20.  In other words, Appellant maintains that it is the act of committing an arson, which then results in endangerment of one or more individuals, that forms the basis of the offense of AEP, irrespective of the number of individuals endangered by the act of committing the arson.

Appellant further argues that "even if the language were ambiguous in isolation, its plain meaning is further underscored by context." *Id.* at 21.  In this regard, he highlights that Section 3301(a) is titled "Arson endangering persons" − *plural*.  He also notes that

---

[6] This argument is inconsistent with Appellant's position before the trial court and Superior Court, wherein he argued that Section 3301(a)(1)(i) was ambiguous.

Section 3301(a) is a subsection of Section 3301, which is titled "Arson and related offenses"; that Section 3301 falls under Chapter 33 of the Crimes Code, which is titled "Arson, Criminal Mischief, and Other Property Destruction"; and, finally, that Chapter 33 falls under Article C of the Crimes Code, which is titled "Offenses Against Property." In Appellant's view, it is significant that the offense of AEP falls under Article C, pertaining to property offenses, rather than under Article B of the Crimes Code, which concerns "Offenses Involving Danger to the Person," and, more specifically, that it does not fall under Chapter 27, which is titled "Assault," or under the REAP statute, 18 Pa.C.S. § 2705, which provides that a person commits misdemeanor of the second degree if he engages in conduct that recklessly places or may place another person in danger of death or serious bodily injury.

Moreover, Appellant notes that Section 3301(a)(1)'s two subsections – subsection (i), which requires the reckless endangerment of another person, and subsection (ii), which requires the intent to destroy or damage an inhabited building – both focus on arson as the *actus reus*.

Notwithstanding his argument that the language of Section 3301(a)(1)(i) is plain in both isolation and context, and without acknowledging that consideration of the history of a statute is appropriate only when the statute is ambiguous, Appellant argues that the history of Section 3301 demonstrates that the intended unit of prosecution is each arson, not each endangered person. Specifically, he offers that the adoption of Section 3301 was essentially a "housekeeping device," Appellant's Brief at 25, the intent of which was to "bring order to a chaotic mélange of arson offenses with disparate penalties by creating a sensible grading system based on the *type* of arson at issue," as opposed to adopting "a new crime against persons, *id.* at 29-30 (emphasis original). Appellant additionally maintains that, if we find that Section 3301(a)(1)(i) is ambiguous, the rule of lenity requires

that we construe it strictly, and in his favor, and hold that the unit of prosecution is each arson, not each endangered person.

Finally, Appellant asserts that, in concluding that the unit of prosecution for AEP is each person endangered as a result of an arson, the Superior Court erred in relying on this Court's decision in *Frisbie*, which he alleges is "flawed and, in any event, distinguishable." *Id.* at 32 (emphasis omitted). In this respect, he reiterates the argument he made to the Superior Court that, under the SCA, phrases such as "another person" are deemed to include the plural "other persons," *id.* at 32 (quoting 1 Pa.C.S. § 1902), and he avers that *Frisbie* both neglected to conduct a meaningful analysis of legislative intent, and failed to follow the rule of lenity. He contends that our holding in *Frisbie* should be confined to its context – the offense of REAP − which is directed at "nonspecific conduct which is conceptually defined by the subsequent language of endangerment." *Id.* at 35.

In response to Appellant's arguments, the Commonwealth initially concedes that Section 3301(a)(1)(i) is ambiguous, thus requiring this Court to engage in a statutory construction analysis to determine the legislature's intent. Commonwealth's Brief at 12-13. However, the Commonwealth maintains that such an analysis reveals that the legislature intended that the unit of prosecution for AEP is the number of individuals endangered as a result of the arson. The Commonwealth asserts that Appellant's contrary position "completely ignores the meaning of actus reus," which the Commonwealth notes is defined in Black's Law Dictionary as "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability; a forbidden act." *Id.* at 14 (emphasis and citation omitted). Contrasting AEP with the offense of leaving the scene of an accident that was at issue in *Satterfield*, the Commonwealth argues that AEP requires "something more"

than merely "starting a fire," because starting a fire is not, in and of itself, a "wrongful deed" or "guilty act," as one might lawfully start a fire in a fireplace. Commonwealth's Brief at 15. In the Commonwealth's view, because AEP requires the starting of a fire which places another person in danger of death or bodily injury, the unit of prosecution is not each arson, but, rather, each endangered person.

The Commonwealth acknowledges that the title of Section 3301(a) contains the word "arson," but argues that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control," and, even when a statute is found to be ambiguous, "the title . . . may be considered only to resolve the uncertainty." *Id.* at 19 (citing *Commonwealth v. Magwood*, 469 A.2d 115, 119 (Pa. 1983)) (emphasis omitted). Then, in what appears to be its own about-face, the Commonwealth asserts that, in the instant case, "there is no ambiguity." *Id.*

The Commonwealth further argues that this Court's decision in *Frisbie* supports its position that the unit of prosecution for AEP is each endangered individual, not each arson, highlighting our recognition that the purpose of the Crimes Code includes "ensuring that punishment is proportionate with criminal liability," and "differentiating among offenders based on the seriousness of their offenses." *Id.* at 20. The Commonwealth submits that it is reasonable to presume that the legislature intended to punish someone who sets fire to a structure that contains multiple occupants more severely than someone who sets fire to an unoccupied or empty structure.

Finally, the Commonwealth observes that Section 3301 is written in the same manner as the REAP statute in *Frisbie,* which criminalizes conduct that "places or may place *another person* in danger of death or serious bodily injury." *Id.* at 21 (emphasis original). It notes, as did the Superior Court below, that, in *Frisbie*, we held that use of the phrase "another person" suggested that a defendant may be convicted of separate

offenses for each individual placed in danger, and that, "[w]here the legislature has intended to preclude multiple punishments for multiple injuries resulting from a single act, it has expressly done so."  *Frisbie*, 485 A.2d at 1100 (citing 18 Pa.C.S. § 2707).  In response to Appellant's claim that our decision in *Frisbie* was flawed, the Commonwealth opines that Appellant merely "dislikes what *Frisbie* has to say."  Commonwealth's Brief at 23.

### III.  Analysis

The question of the proper unit of prosecution for the offense of AEP under Section 3301(a)(1) is a question of statutory interpretation; accordingly, our standard of review is *de novo*, and our scope of review is plenary.  *See Commonwealth v. (Shane) Smith*, 221 A.3d 631, 636 (Pa. 2019).

In interpreting or construing a statute, our objective is to ascertain and effectuate the intention of the General Assembly.  1 Pa.C.S. § 1921(a); *Commonwealth v. Gamby,* 283 A.3d 298, 306 (Pa. 2022).  The General Assembly's intent "is best expressed through the plain language of the statute."  *Gamby*, 283 A.3d at 306.  Thus, when the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit.  1 Pa.C.S. § 1921(b).

However, if a statutory term, read in context within the overall statutory framework in which it appears, has at least two reasonable interpretations, the term is ambiguous.  (*Shane) Smith*, 221 A.3d at 638.  If the words of a statute are not explicit, or are ambiguous, we may ascertain the intent of the General Assembly by considering the following factors, as set forth in the SCA:  (1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the

contemporaneous legislative history; and (8) legislative and administrative interpretations of such statute. 1 Pa.C.S. § 1921(c). Further, under the rule of lenity, when the language of a penal statute is ambiguous, it must be strictly construed in favor of the defendant. *Id.* § 1928(b)(1); *(Shane) Smith*, 221 A.3d at 639.

To reiterate, Section 3301 is titled "Arson and related offenses," and subsection (a) provides:

> **Arson endangering persons.**--
>
> (1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:
>
> > (i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; or
> >
> > (ii) he commits the act with the purpose of destroying or damaging an inhabited building or occupied structure of another.
>
> (2) A person who commits arson endangering persons is guilty of murder of the second degree if the fire or explosion causes the death of any person, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire, and is guilty of murder of the first degree if the fire or explosion causes the death of any person and was set with the purpose of causing the death of another person.

18 Pa.C.S. § 3301(a).

As noted above, the *actus reus*, or unit of prosecution, is the conduct that the General Assembly intends to punish. Stated another way, it is the minimum conduct that must be proven in order to obtain a conviction under a particular statute. In determining the correct unit of prosecution for a particular statute, "the inquiry should focus on whether

separate and distinct prohibited acts . . . have been committed." *Satterfield*, 255 A.3d at 446 (citation omitted).

Based on the legislature's use of the word "and" at the end of subsection (a)(1), it is clear that a conviction for AEP requires both the intentional act of starting a fire or causing an explosion, and one of two additional elements – the intentional act of starting a fire or causing an explosion recklessly placed another person in danger of death or bodily injury, *see* § 3301(a)(1)(i), or that the intentional act of starting a fire or causing an explosion was done with the purpose of destroying or damaging an inhabited building or occupied structure of another, *see* § 3301(a)(1)(ii).

It is less clear, however, whether the reckless placement of another person in danger of death or bodily injury as described under subsection (i) is itself a component of the prohibited act, as the Commonwealth argues, or simply a description of the result of the prohibited conduct described in Section (a)(1), as Appellant maintains. Indeed, the term "thereby," which links the two, is defined as, *inter alia*, "a result of [an] action,"[7] or an adverb "used to introduce the result of the action or situation mentioned."[8]

However, as discussed above, without proof of either subsection (i) or (ii), there could be no conviction under Section 3301(a)(1). This suggests that placing another person in danger of death or bodily injury is not merely a description of the result of the prohibited act of starting a fire or causing an explosion, but, rather, an essential component of the minimum conduct that must be proven to support a conviction – the *actus reus* − under Section 3301(a)(1)(i).

---

[7] Thereby, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/thereby.

[8] Oxford Learner's Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/thereby?q_thereby

Hence, we consider the language of Section 3301(a)(1)(i) in context of the overall statutory framework of Section 3301.  As discussed above, Appellant submits, *inter alia*, that the placement of Section 3301 under Chapter 33 – titled "Arson, Criminal Mischief, and Other Property Destruction" – which is contained in Article C – titled "Offenses Against Property" – instead of under Chapter 27 ("Assault") of Article B ("Offenses Involving Danger to the Person"), suggests that the focus of AEP is the arson, not the person endangered, and so supports the conclusion that the *actus reus*, or unit of prosecution, of AEP is each arson, not each endangered individual.  Although the headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute are not controlling, they may be used to aid in the construction of a statute.  1 Pa.C.S. § 1924; *Mezzacappa v. Northampton County*, 334 A.3d 268, 283 (Pa. 2025) (observing that, when first enacted, the title describing the Criminal History Record Information Act, 18 Pa.C.S. §§ 9101-9193, revealed that a primary purpose of the act was protecting an individual's right to privacy).  The placement of Section 3301 under Article C of the Crimes Code pertaining to property offenses, rather than Article B regarding offenses to the person, supports Appellant's position that the *actus reus* the legislature seeks to punish is, in fact, the commission of an arson.

Additionally, while this Court in *Frisbie* determined that the unit of prosecution for the offense of REAP is each endangered individual, as Judge Lazarus observed below, the REAP statute is codified under Article B of the Crimes Code, which is titled "Offenses Involving Danger to the Person," and the REAP statute criminalizes conduct against an individual.  Thus, our interpretation of the REAP statute in *Frisbie* does not, in our view, control our interpretation of Section 3301(a)(1)(i) in the instant case.

However, the Crimes Code provides that it is designed to, *inter alia*, authorize punishment that is proportionate with criminal liability, and to differentiate between

offenders based on the seriousness of their offenses. *See* 18 Pa.C.S. § 104(3) (one general purpose of the Crimes Code is to "safeguard offenders against excessive, disproportionate or arbitrary punishment"); *id.* § 104(5) (a general purpose of the Crimes Code is to "differentiate on reasonable grounds between serious and minor offenses, and to differentiate among offenders with a view to a just individualization in their treatment"). In light of these stated purposes, it is reasonable to conclude that the legislature would intend to punish more severely an individual that sets fire to a building containing multiple occupants than an individual who sets fire to a structure containing a single occupant.

Moreover, as the Commonwealth points out, when the legislature has intended to prohibit multiple punishments for multiple injuries resulting from a single act, it has done so expressly. *See id.* § 2707 (it is a crime to throw a rock or any deadly or dangerous missile into a vehicle that is occupied by "one or more persons"); *id.* § 2710 (a person commits ethnic intimidation if they commit an offense with malicious intention toward the race, color, religion or national origin of "another individual or group of individuals").

Based on the foregoing, we find that there is support for both Appellant's interpretation that the unit of prosecution of AEP under Section 3301(a)(1)(i) is each arson, and the Commonwealth's interpretation that the unit of prosecution for the offense is each endangered individual. Accordingly, because Section 3301(a)(1)(i) is capable of multiple reasonable interpretations, we conclude that it is ambiguous. Thus, we turn to consideration of the aforementioned factors set forth in Section 1921(c) of the SCA.

Upon review of those factors, we find that four in particular − the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, and the object to be attained – support a conclusion that the unit of prosecution for the offense of AEP under Section 3301(a)(1)(i) is each arson.

As Sheldon S. Toll noted in his discussion about the creation of the new Crimes Code in Pennsylvania,

> [b]ecause of the patchwork accretion of Pennsylvania penal statutes originating over 150 years ago, a systematic grading or rationale of sentencing did not exist. Consequently, punishment frequently was highly disproportionate to the degree of culpability of the offender and the danger of his criminal act to the community when compared to similar criminal acts. . . . The new Code systemizes the classification of all crimes into grades and degrees.

Sheldon S. Toll, *Criminal Law Reform in Pennsylvania: The New Crimes Code*, 78 Dick. L. Rev. 1, 3 (1973).

Addressing the specific treatment of arson-related crimes under the new Crimes Code, Toll further observed:

> Remembering that many of Pennsylvania statutes were originally formulated when the state was primarily rural, it was not surprising to find inordinately severe penalties for burning those objects most important to the farming community, and inadequately lax penalties for putting fire to some objects generally associated with our modern urban way of life. As a result, Pennsylvania had statutory proscriptions against burning a ". . . barn, stable or other outhouse" punishable by a maximum of twenty years imprisonment. Burning hay, wheat, corn, grain, vegetables, or any pile of coal, wood, fuel, planks, boards, etc., with a value of over $25 subjected the offender to a maximum of two years imprisonment. In contrast to these provisions were a ten-year maximum penalty for burning down a heavily populated school or theater, and a meager two-year maximum penalty for setting aflame a teeming tourist cruiser.
>
> In the new Code, the harsher sentences for the unlawful burning of those structures deemed of first importance to a rural economy are gone. The Code encompasses all phases of the offense of arson by distinguishing between arson endangering life and arson endangering property only, classifying the former as a felony of the first degree and the latter merely as a felony of the second degree.

*Id.* at 7-8.

Thus, the Crimes Code, as a whole, was enacted to classify all crimes into grades and degrees. Moreover, Section 3301, in particular, differentiates between arson endangering persons and property – Section 3301(a) – and arson endangering only property – Section 3301(c) – and allows for a harsher sentence for the former by designating the offense of AEP as a felony of the first degree. There is nothing, however, to suggest that the underlying intent of Section 3301(a) was to allow for separate convictions and sentences for each endangered individual.[9]

Most critically, as noted above, because Section 3301 is a penal statute, under the rule of lenity, it must be strictly construed in favor of Appellant. *See (Shane) Smith*, 221 A.3d at 639. As the United States Supreme Court explained in *Dunn v. United States,* 442 U.S. 100 (1979), the application of the rule of lenity is "not merely a convenient maxim of statutory construction," but, rather, "is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Id.* at 112. Thus, the ambiguity we have discussed above should be resolved in Appellant's favor.

---

[9] We do not discount the Commonwealth's position that it is reasonable to punish an individual who commits a criminal act, including arson, that endangers many people more severely than an individual who commits a criminal act that endangers one person. However, where the endangerment of multiple individuals results from the commission of an arson, a defendant could be charged with a single AEP offense under Section 3301(a)(1)(i), and charged with multiple counts of REAP under 18 Pa.C.S. § 2705. *See, e.g., Commonwealth v. Glass*, 50 A.3d. 720 (Pa. Super. 2012) (defendant who set fire to his home in which his wife and two children were present, and subsequently was convicted of one count of AEP and three counts of REAP, was properly sentenced on AEP offense, and two counts of REAP, as one of the REAP convictions merged with the AEP conviction for sentencing purposes). While a REAP conviction requires the Commonwealth to prove that the victims were placed in danger of death or *serious* bodily injury (whereas AEP requires a showing of only bodily injury), doing so in the factual context of an arson ought to be undemanding.

For all these reasons, we hold that the unit of prosecution for the offense of AEP is each arson, not each person endangered by the arson. Accordingly, we reverse the decision of the Superior Court, and, because our decision may upset the trial court's overall sentencing scheme, we vacate his judgment of sentence and remand the matter to the Superior Court for remand to the trial court for resentencing consistent with this opinion.[10]

Order Reversed. Case remanded. Jurisdiction relinquished.

Justices Donohue, Dougherty and Wecht join the opinion.

Justice Mundy files a dissenting opinion in which Justice Brobson joins.

Justice McCaffery did not participate in the consideration or decision of this matter.

---

[10] Notably, although Appellant requests that we vacate three of his four judgments of sentence for AEP, he does not ask this Court to reverse any of his convictions for AEP. *See* Appellant's Brief at 36 ("[I]f this Honorable Court agrees that the offense's unit of prosecution is each arson, rather than each endangerment, it should vacate three of his four sentence[s] and remand for resentencing."); *id.* at 37 ("[Appellant] respectfully requests that [this Court] enter an order reversing the *en banc* panel's decision, vacating three of his four sentences for [AEP]."). Although we recognized in *Satterfield* that "[o]nly a single conviction and resulting punishment may be imposed for a single unit of prosecution," 255 A.3d at 446, we emphasized that the validity of the charging documents and Satterfield's guilty plea were not before us, and that we were "concerned only with the legality of the sentences imposed," *id.* at 445 n.12. As Appellant likewise challenges only the legality of his sentence, consistent with our approach in *Satterfield*, we do not address the validity of Appellant's convictions for AEP.